1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10

ELIZABETH MARIE PINTO,

11                          Plaintiff,

12          v.

13  KILOLO KIJAKAZI,

14  Acting Commissioner of Social Security,[1]

15                          Defendant.

Case No. 1:21-cv-00585-SKO

ORDER ON PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

(Doc. 1)

16
17
18  _____/
19                  **I.      INTRODUCTION**

20          Plaintiff Elizabeth Marie Pinto ("Plaintiff") seeks judicial review of a final decision of the

21  Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application

22  for Supplemental Security Income (SSI) under the Social Security Act (the "Act").  (Doc. 1.)  The

23  matter is currently before the Court on the parties' briefs, which were submitted, without oral

24  argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

25
26
27

---

[1] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration.  *See* https://www.ssa.gov/history/commissioners.html.  She is therefore substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant").

28

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 10.)

## II.     BACKGROUND

Plaintiff protectively filed an application for SSI payments on August 14, 2017, alleging that she became disabled on March 1, 2012,[3] due to post-traumatic stress disorder ("PTSD"), severe anxiety, depression, and allergies.  (Administrative Record ("AR") 17, 264.)  Plaintiff was born on July 11, 1961, and she was 56 years old on the date the application was filed.  (AR 32, 260.)  She has at least a high school education and has past work experience as a dishwasher and a teacher's assistant.  (AR 32, 265.)

### A.     Relevant Medical Evidence[4]

Plaintiff's past medical history included Graves' disease, depression, anxiety, allergies, asthma, and unspecified hypothyroidism.  (*See* AR 368, 374, 487.)  On February 23, 2016, Plaintiff came to the Madera County Behavioral Health Services for a clinical mental health assessment due to feeling increasingly overwhelmed by life changes and an inability to cope with long-term mental health issues.  (AR 508.)  That day, and again in February 2017, Plaintiff was diagnosed with major depressive disorder and PTSD.  (AR 529, 531.)  On June 7, 2017, a screening indicated severe depression.  (AR 487.)  X-rays of Plaintiff's lumbar spine for lumbago with sciatica taken on September 18, 2017, indicated lack of change as to Grade I/II anterolisthesis of L5 on S1, narrowing of the intervertebral disc space at L5-S1 with superior and inferior endplate sclerotic changes, and minimal anterior osteophytosis throughout the lumbar spine.  (AR 571.)

On multiple occasions from November 2017 to February 2020, Plaintiff received mental health treatment from a psychiatrist and reported improvements as to her depression and mood swings and, with slight changes to her regimen, sought to continue with the medications.  (See AR 585–86, 689, 691, 693, 695, 697, 701, 706, 710, 747–48.)  On March 12, 2018, Plaintiff reported that the ibuprofen she had been taking was not helping with her back pain, as it had become "more bothersome with movement."  (AR 6345, 637.)  A physical examination revealed lumbar pain with decreased range of motion due to pain and mild right lumbar paraspinal muscle tenderness to palpitation.  (AR 637.)  Plaintiff was assessed for hypothyroidism and acute right-sided lower back

---

[3] Plaintiff amended her alleged onset date to August 14, 2017, her application date.  (*See* AR 17, 61, 67–68.)

[4] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

pain without sciatica, and she was advised to continue with ibuprofen as needed as well as baclofen three times daily.  (AR 637.)

**B.**     **Plaintiff's Adult Function Report**

Plaintiff submitted a Function Report dated August 31, 2017.  (AR 286–94.)  She reported that her illnesses limited her ability to work because her concentration level has been severely impacted to the point where she is constantly losing focus when doing the smallest of jobs.  (AR 286, 291.)  She also stated she is affected by loud or moderate noises and sudden movements, as they make her anxious.  (AR 286, 293.)  Plaintiff further reported that her allergy to citrus acid and her inability to lift heavy objects limits her ability to work in several industries.  (AR 286.)  Plaintiff acknowledged wearing the same clothes for days and only bathing when she really needed to, such as every two weeks.  (AR 287.)  Plaintiff stated she is able to do laundry, wash dishes, sweep, and shop for groceries, but it takes her about two hours and she needs encouragement from her daughter to do household tasks.  (AR 288–89.)  Plaintiff indicated she can lift only 10 pounds, she cannot stand for extended periods of time, and she has trouble talking and forming sentences.  (AR 291.)  She further stated she can only pay attention for 10 minutes, she is distracted easily, she can only follow written instructions, otherwise she feels extremely anxious, and she has difficulty following conversations.  (AR 291, 293.)  Lastly, Plaintiff stated she does not handle stress and changes in the routine well, as she gets anxious.  (AR 292.)

**C.**     **Opinion Evidence**

On November 27, 2017, State agency mental health disability consultant, Dr. Helen Patterson, noted that Plaintiff had adequate mental capacity to complete complex tasks, to carry out both simple and detailed instructions, to follow directions without additional assistance, and to maintain adequate attention, concentration, persistence, and pace as needed to sustain a normal workday and workweek.  (AR 86–87.)  On February 13, 2018, Dr. M. Salib, also a State agency mental health disability consultant, affirmed Dr. Patterson's opinion.  (AR 100–01.)

On October 17, 2017, Plaintiff underwent a psychological disability evaluation by psychologist Dr. Lance Portnoff, Ph.D.  (AR 573–77.)  Plaintiff's chief complaints were PTSD, severe anxiety, depression, and allergies.  (AR 573.)  During this evaluation, Plaintiff described

PTSD with symptoms such as "uncued" panic attacks twice a week and overactive verbal anger, as well as chronic depression.  (AR 573–74.)  Plaintiff also stated that she does not need help with bathing, dressing, and grooming, but she has inadequate motivation to do such tasks.  (AR 575.)

Dr. Portnoff opined that Plaintiff had some minor cognitive deficits which could be due to depression and anxiety, and that the prognosis for her major depression and PTSD was fair, depending upon continued access and response to an efficacious psychotropic regimen and her underlying health.  (AR 576.)  Dr. Portnoff opined that Plaintiff was currently capable of managing her own funds independently and performing simple and repetitive tasks.  Dr. Portnoff further opined that Plaintiff had no limitations with accepting instructions from supervisors and maintaining regular attendance in the workplace from a psychological standpoint.  Dr. Portnoff also opined that Plaintiff had mild limitations in her abilities to perform detailed and complex tasks and to work on a consistent basis without special or additional instructions due to psychiatric problems.  Dr. Portnoff opined that Plaintiff had mild to moderate limitations interacting with coworkers and the public and dealing with the stress encountered in a competitive work environment due to her major depressive disorder and PTSD.  Finally, Dr. Portnoff opined that Plaintiff had moderate limitations in her ability to complete a normal workday or workweek without interruptions from a psychiatric condition due to psychiatric symptoms.  (AR 576–77.)

Also on October 17, 2017, State agency disability consultant Dr. Y. Ruo reported that Plaintiff stated her lower back pain no longer hurt and her physical examinations appeared within normal limits.  (AR 83.)  Dr. Ruo opined that Plaintiff's physical impairments were not severe.  (AR 83.)  On February 14, 2018, State Agency disability consultant Dr. Francis Greene affirmed Dr. Ruo's conclusion that Plaintiff's physical impairments were not severe.  (AR 96.)

On January 8, 2020, Plaintiff underwent a mental health evaluation with Dr. Megan Stafford, Psy.D.  (AR 714–22.)  Plaintiff reported that her present illnesses consisted of depression, anxiety, and PTSD.  (AR 715–16.)  Dr. Stafford opined that Plaintiff's abilities of performing simple repetitive tasks and work activities on a consistent basis without special or additional instructions were unimpaired.  Dr. Stafford further opined that Plaintiff's abilities to do the following were mildly impaired: performing detailed and complex tasks; accepting instructions

from supervisors; and maintaining regular attendance in the workplace.  Dr. Stafford opined that Plaintiff's abilities to do the following were moderately impaired due to limitations such as her emotional dysregulation, low frustration tolerance, psychomotor agitation, and limited coping skills: interacting with coworkers, supervisors, and the public; completing a normal workday without interruptions from a psychiatric condition; and dealing with the usual stress encountered in the workplace.  (AR 718–19.)

**D.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on November 29, 2017, and again on reconsideration on February 14, 2018.  (AR 17, 102, 106, 117.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 123–24.)  At a hearing held on November 20, 2019, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions.  (AR 65–73.)

Plaintiff testified that her symptoms had gotten worse since 2017.  (AR 66.)  It was unclear based on the record how often Plaintiff saw a therapist.  (AR 68–72.)  Accordingly, the hearing was continued in order to obtain further medical evidence records and for Plaintiff to undergo a consultative examination.  (AR 17, 71–73.)

**1.     Plaintiff's Testimony**

At the next hearing held on April 8, 2020, Plaintiff appeared with counsel and testified before an ALJ.  (AR 44–57.)  Plaintiff testified that she had Graves' disease for roughly 35 years and has been taking medication for it, and otherwise she could not function.  (AR 45.)  Plaintiff stated her Graves' disease is not under control and she experiences side effects from the medication.  (AR 45–46.)  The Graves' disease also affects her mental impairment and eyesight.  (AR 46.)  Due to changes in the dosage of the medication, Plaintiff lost weight, did not have the energy to work a full day, and could only lift 10 pounds.  (AR 46–47.)  She estimated that two or three times a week, she would need to rest or lie down for four or five hours.  (AR 47.)

Plaintiff testified that it takes her several hours to step out of the house because going out makes her feel afraid and anxious to the point where she feels stomach cramps and her arms shake.  (AR 48.)  According to Plaintiff, she is always anxious and her anxiety affects her ability

to function, but it is not as bad if she does not leave the house.  (AR 48–49.)  Plaintiff stated she experiences the following symptoms on and off all day: body aches; hands shaking; stuttering when she tries to speak; face twitches; heartbeat racing; and palms sweating.  (AR 49.)

Furthermore, Plaintiff testified that she takes medication for anxiety twice a day, and though the medication helps, it does not eliminate the anxiety completely.  (AR 50.)  She is only able to watch a television program for about half an hour to 45 minutes before she needs to take a break.  (AR 50–51.)  Plaintiff also sees her daughter and grandson on a regular basis.  (AR 51.)  Because Plaintiff feels overwhelmed by driving in big cities, her daughter must drive her places or she does not go.  (AR 51–52.)  Plaintiff is able to drive to the store in her small town where it is not as busy.  (AR 51–52.)

Plaintiff stated she experiences the following symptoms due to depression: loss of appetite; loss of train of thought; constant thoughts of self-doubt; and lack of health hygiene.  (AR 52.)  As to the latter symptom, Plaintiff explained that she would go two to three weeks without doing things like taking a shower or bath and changing clothes.  (AR 52.)  As for her PTSD, Plaintiff is fearful of going to gatherings and when she does go, she positions herself near an exit.  (AR 53.)  She is only able to calm down at gatherings if alcohol is involved.  (AR 53.)  Plaintiff also has recurring thoughts, especially at night, about three to four times a week, that are triggered by self-doubt.  (AR 53–54.)  And, she is unable to sleep at night without medication due to racing thoughts, body aches, and muscle spasms.  (AR 54.)

With regard to her physical limitations, according to Plaintiff, she always has joint pain in her back, knees, and hands.  (AR 55.)  She is able to relieve the back pain by laying on the floor with her feet up and a pillow underneath her knees, and she takes prescription pain medication.  (AR 55–56.)  When her back pain flares up, around two or three times a month, Plaintiff will use a cane to walk.  (AR 56–57.)

### 2.    Vocational Expert's Testimony

A Vocational Expert ("VE") also testified at the hearing.  (AR 57.)  The ALJ noted that there was no past relevant work to consider.  (AR 57.)  In a first hypothetical, the ALJ asked the VE to assume someone had simple, routine, repetitive tasks in a static work environment with

occasional contact with the public, occasional tasks that require teamwork, no concentrated exposure to respiratory irritants such as fumes, smoke, chemicals, or a work environment in poor ventilation, and no work hazards such as working at unprotected heights, operating fast or dangerous machinery, or driving commercial vehicles.  (AR 59.)  The ALJ asked whether, based on those limitations, any medium range jobs would exist for such a person.  (AR 59.)  The VE testified that such a person could perform the occupations of kitchen helper or dishwasher, Dictionary of Occupational Titles ("DOT") 318.687-010, specific vocational preparation (SVP)[5] level of 2, with about 145,0 00 jobs in the national economy; hand packager, DOT 920.587-018, SVP 2, with about 81,000 national jobs; and meat trimmer, DOT 525.684-054, SVP 2, with about 6,000 national jobs.  (AR 60.)

The ALJ then asked, in addition to the previously mentioned limits, if such a person was unable to sustain a full eight-hour day because of several symptoms related to mental health, whether any of those jobs would be eliminated.  The ALJ listed the following symptoms in asking this question:  the inability to concentrate or focus; chronic pain; and side effects of medications, to the point where there were only three to four productive hours out of an eight-hour workday. (AR 60.)  The VE responded in the affirmative.  (AR 61.)

**E.      The ALJ's Decision**

In a decision dated April 29, 2020, the ALJ found that Plaintiff was not disabled, as defined by the Act.  (AR 17–33.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920.  (AR 18–33.)  The ALJ decided that Plaintiff had not engaged in substantial gainful activity since August 14, 2017, the application date (Step One).  (AR 19.)  At Step Two, the ALJ found Plaintiff's following impairments to be severe: depressive disorder; Graves' disease with pretibial myxedema; anxiety disorder; hypothyroidism; asthma; chronic obstructive pulmonary disease; lumbago with sciatica; and spine disorder.  (AR 19.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation).  *Id*.

1    C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (Step Three).  (AR 20–21.)

2         The ALJ then assessed Plaintiff's residual functional capacity (RFC) and applied the RFC

3    assessment at Steps Four and Five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three

4    to step four, we assess your residual functional capacity . . . . We use this residual functional

5    capacity assessment at both step four and step five when we evaluate your claim at these steps.").

6    The ALJ determined that Plaintiff had the RFC

7              to perform a range of medium work as defined in 20 CFR [§] 416.967(c).
              Specifically, [Plaintiff] can lift and carry 50 pounds occasionally and 25 pounds
8              frequently.  She can stand and/or walk for six hours in an eight-hour workday.  She
              can perform simple, repetitive, routine tasks in a static work environment that stays
9              the same from day to day in regards to the physical surroundings and tasks to be
              performed.   She can have occasional contact with the public, and perform
10             occasional tasks that require teamwork.  She cannot be subjected to concentrated
              exposure to respiratory irritants such as fumes, smoke, chemicals and poor
11             ventilation, and she cannot work at unprotected heights or around fast or dangerous
              machinery, and she cannot drive commercial vehicles.
12

13   (AR 21.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected

14   to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely

15   consistent with the medical evidence and other evidence in the record[.]"  (AR 23.)

16        The ALJ found that Plaintiff has no past relevant work (Step Four), but that, on the basis of

17   the RFC assessment, she retained the capacity to perform other work that existed in significant

18   numbers in the national economy, such as kitchen helper, hand packager, and meat trimmer (Step

19   Five).  (AR 32–33.)  The ALJ concluded that Plaintiff was not disabled since August 14, 2017, the

20   date the application was filed.  (AR 33.)

21        Plaintiff sought review of this decision before the Appeals Council, which denied review

22   on October 6, 2020.  (AR 5–10.)  Therefore, the ALJ's decision became the final decision of the

23   Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

24                        **III.     LEGAL STANDARD**

25   **A.   Applicable Law**

26        An individual is considered "disabled" for purposes of disability benefits if they are unable

27   "to engage in any substantial gainful activity by reason of any medically determinable physical or

28   mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However,

"[a]n individual shall be determined to be under a disability only if [their] physical or mental

impairment or impairments are of such severity that [they are] not only unable to do [their] previous

work but cannot, considering [their] age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining

whether a claimant is disabled within the meaning of the [Act]."  *Tackett v. Apfel*, 180 F.3d 1094,

1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.  The Ninth

Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in
> substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ
> proceeds to step two and evaluates whether the claimant has a medically severe
> impairment or combination of impairments.  If not, the claimant is not disabled.  If
> so, the ALJ proceeds to step three and considers whether the impairment or
> combination of impairments meets or equals a listed impairment under 20 C.F.R. pt.
> 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If
> not, the ALJ proceeds to step four and assesses whether the claimant is capable of
> performing [their] past relevant work.  If so, the claimant is not disabled.  If not, the
> ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to
> perform any other substantial gainful activity in the national economy.  If so, the
> claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4)

(providing the "five-step sequential evaluation process" for SSI claimants).  "If a claimant is found

to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent

steps."  *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of

the analysis."  *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir.

1989)).  "However, if a claimant establishes an inability to continue [his or her] past work, the

burden shifts to the Commissioner in step five to show that the claimant can perform other

substantial gainful work."  *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only]

when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097. "Substantial evidence" means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "'Substantial evidence is more than a mere scintilla but less than a preponderance.'" *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "'[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.'" *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020); *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). The Court must instead determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts may not reverse an ALJ's decision on account of an error that is harmless. *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). Harmless error "exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal quotation marks omitted). "[T]he burden of showing that an error is harmful normally falls upon the party

attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## IV.     DISCUSSION

Plaintiff alleges that the ALJ harmfully erred in three ways.  First, Plaintiff claims the ALJ's Step Five analysis is not supported by substantial evidence because the VE's testimony conflicts with the DOT.  (Doc. 16 at 7–12.)  Second, Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because the ALJ erroneously failed to obtain an assessment of Plaintiff's limitations from a treating or examining source and used her lay knowledge to interpret the raw medical evidence.  (Doc. 16 at 12–14.)  Third, Plaintiff contends ALJ improperly discounted her subjective complaints.  (Doc. 16 at 14–17.)  For the reasons stated below, the Court finds that the ALJ did not err.

### A.     The ALJ Properly Adopted the VE's Testimony at Step Five

#### 1.     Legal Standard

At Step Five, the Commissioner considers the RFC assessment, the claimant's age, education, and work experience to determine if the claimant can perform other work. 20 C.F.R. § 416.920(a)(4)(v).  The RFC assessment consists of the "physical and mental" limitations on what a claimant can do because of his or her impairments.  20 C.F.R. § 416.945(a)(1).  The ALJ then evaluates potential occupations that a claimant can perform.  *See* 20 C.F.R. § 416.966.  The DOT is used to determine what jobs exist in the national economy.  *Zavalin v. Colvin*, 778 F.3d 842, 845–46 (9th Cir. 2015).   The DOT is the Commissioner's "'primary source of reliable job information,'" *Johnson v. Shalala*, 60 F.3d 1428, 1434 n.6 (9th Cir. 1995), and creates a rebuttable presumption as to a job classification, *Tommasetti*, 533 F.3d at 1042.

In addition to the DOT, the ALJ relies on VE testimony to determine whether a claimant can perform any work and the specific occupations a claimant can perform in light of his or her RFC.  *Zavalin*, 778 F.3d at 846 (citing 20 C.F.R. § 416.966(e); *Valentine*, 574 F.3d at 689).  "'Given its inherent reliability, a qualified [VE's] testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's [S]tep-[F]ive finding.'"   *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1192 (9th Cir. 2022).  "Indeed, a VE's expert opinion 'may count as substantial evidence even when unaccompanied by

supporting data.'" *Id.* at 1192–93.  "Finally, to conclude the Step Five analysis, the ALJ determines 'whether, given the claimant's [RFC], age, education, and work experience, [he or she] actually can find some work in the national economy.'" *Zavalin*, 778 F.3d at 846 (citing *Valentine*, 574 F.3d at 689; 20 C.F.R. § 416.920(g)).

However, "although VE testimony is 'inherently reliable,' it is 'not incontestable.'" *Kilpatrick*, 35 F.4th at 1193.  "When there is an apparent conflict between the [VE's] testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin*, 778 F.3d at 846 (citing *Massachi v. Astrue*, 486 F.3d 1149, 1153–54 (9th Cir. 2007)).  In *Massachi*, the Ninth Circuit instructed as follows:

> the ALJ must first determine whether a conflict exists.  If it does, the ALJ must then determine whether the [VE's] explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT].

*Massachi*, 486 F.3d at 1153.

In order for the ALJ to accept VE testimony that contradicts the DOT, "the record must contain 'persuasive evidence to support the deviation.'" *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001) (quoting *Johnson*, 60 F.3d at 1435).  "Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the [VE]'s testimony." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted).  "The ALJ's failure to resolve an apparent inconsistency may leave us with a gap in the record that precludes us from determining whether the ALJ's decision is supported by substantial evidence." *Zavalin*, 778 F.3d at 846.  Nevertheless, an ALJ's failure to inquire into an apparent conflict is harmless where there is no actual conflict between the RFC and the DOT. *Ranstrom v. Colvin*, 622 Fed. Appx. 687, 689 (9th Cir. 2015) (citing *Massachi*, 486 F.3d at 1154 n.19).

### 2.    Analysis

Plaintiff raises several issues surrounding the VE's testimony.  She acknowledges that the ALJ directed the VE to testify in accordance with the DOT and to explain any testimony that was inconsistent, but notes that after the VE testified, the ALJ did not make any further inquiry into

1   whether the VE's testimony was indeed consistent with the DOT.  (Doc. 16 at 9–10.)  Plaintiff

2   further notes that the VE did not identify any potential conflict from the DOT as to the reaching

3   limitation, nor did the VE provide any explanation to resolve the potential or apparent conflict.

4   (Doc. 16 at 9.)  Lastly, Plaintiff contends it was error for the ALJ to fail to ask about conflicts

5   regarding the issue of the static work environment because the VE never testified regarding the

6   source of the vocational information, whether it be from her experience or some other source.

7   (Doc. 16 at 10.)

8        Plaintiff's arguments are unavailing.  Here, the ALJ determined that Plaintiff had the RFC

9   to perform "medium work," but with various limitation, including limiting Plaintiff to "simple,

10  repetitive, routine tasks in a static work environment that stays the same from day to day in regards

11  to the physical surroundings and tasks to be performed."  (AR 21.)  During the hearing, the VE

12  testified that she was familiar with the jobs that existed in the national economy, the DOT, and

13  the Act's definitions of unskilled, semi-skilled, skilled, sedentary, light, medium, heavy, and very

14  heavy work.  (AR 58.)  The ALJ also asked whether the VE understood that if she gave an opinion

15  that conflicted with information in the DOT, she would need to advise the ALJ of the conflict and

16  the basis of her opinion.  (AR 58.)  The VE responded in the affirmative.  (AR 58.)

17       The ALJ then presented the VE with two hypothetical questions that included these

18  limitations.  (AR 59–61.)  In the first hypothetical, the ALJ asked the VE what jobs involving

19  medium work would exist for someone with limitations including simple, routine, repetitive tasks

20  in a static work environment with occasional contact with the public, occasional tasks that require

21  teamwork, no concentrated exposure to respiratory irritants, and no work hazards.  (AR 59.)  The

22  VE testified that such a person could perform the occupations of a kitchen helper or dishwasher,

23  hand packager, and meat trimmer.  (AR 60.)  The VE also eroded the number of jobs available in

24  the national economy, based on her personal knowledge and professional experience, to reflect

25  Plaintiff's limitations.  (AR 61.)

26       Despite Plaintiff's assertion to the contrary, the ALJ assigned no limitation regarding

27  Plaintiff's ability to reach objects.  Thus, the VE's testimony that Plaintiff could perform the jobs

28  of kitchen helper or dishwasher, hand packager, and meat trimmer did not deviate from the DOT.

1   *See, e.g., Reese v. Astrue*, No. ED CV 11 –540 –PLA, 2012 WL 137567, at *7 (C.D. Cal. Jan. 17,

2   2012) (finding no conflict between the DOT and Plaintiff's limitations where ALJ's RFC

3   determination contained no reaching limitations and VE testimony stated Plaintiff could perform

4   jobs that require constant reaching).

5          Furthermore, the ALJ was not obligated to make additional inquiries as to the source of

6   the VE's information or to ask a second time whether the VE's testimony was consistent with the

7   DOT.  "A VE's recognized expertise provides the necessary foundation for his or her testimony.

8   Thus, no additional foundation is required."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir.

9   2005); *see also Kilpatrick*, 35 F.4th at 1192–93; *Fox v. Barnhart*, 42 Fed. Appx. 911, 912 (9th

10  Cir. 2002) (ALJ may rely on VE's testimony when the expert specifically eroded the number of

11  available [jobs] to address an apparent conflict with the DOT); POLICY INTERPRETATION RULING:

12  TITLES II & XVI: USE OF VOCATIONAL EXPERT & VOCATIONAL SPECIALIST EVIDENCE, & OTHER

13  RELIABLE OCCUPATIONAL INFO. IN DISABILITY DECISIONS, SSR 00–4P, 2000 WL 1898704, at *3

14  (S.S.A. Dec. 4, 2000) ("The DOT lists maximum requirements of occupations as generally

15  performed, not the range of requirements of a particular job as it is performed in specific settings.

16  A VE . . . may be able to provide more specific information about jobs or occupations than the

17  DOT.").  And, Plaintiff does not dispute that the VE identified jobs that would accommodate her

18  static work environment restrictions.

19          Moreover, any conflict between the DOT and the VE's testimony in this case was not

20  apparent and obvious.  *See Gutierrez v. Colvin*, 844 F.3d 804, 807–08 (9th Cir. 2016).  "[A]n ALJ

21  need only follow up on those that are."  *Id*. at 808.  To constitute a conflict, the difference between

22  the VE's testimony and the DOT's listings must be obvious or apparent.  *Id*.  "This means that the

23  testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral,

24  or expected."  *Id*.  Thus, tasks that are not essential, integral, or expected parts of a job are less

25  likely to qualify as apparent conflicts that the ALJ must inquire about.  *Id*.  "Likewise, where the

26  job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required."  *Id*.  The

27  obligation of the ALJ to inquire as to a potential conflict does not extend to unlikely situations or

28  circumstances.  *Id*.

Here, the ALJ did not err because there was no apparent or obvious conflict between the VE's testimony that Plaintiff could perform as a kitchen helper, hand packager, and meat trimmer, despite her limitations of "simple, repetitive, routine tasks in a static work environment that stays the same from day to day in regards to the physical surroundings and tasks to be performed" (AR 21), and the DOT's general statements as to those three occupations.  Had the VE opined that Plaintiff would need to perform a wide variety of tasks that were not repetitive and routine on a day-to-day basis, the conflict would have been apparent and obvious, and the ALJ would have been obliged to follow up with more specific questions.  *See Gutierrez*, 844 F.3d at 808.  But where, as here, the frequency of such a task is unlikely and unforeseeable, there is no similar obligation.  *Id*.

Accordingly, the Court finds that there was no apparent or obvious conflict between the VE's testimony and the DOT.  "The requirement for an ALJ to ask follow up questions is fact-dependent."  *Gutierrez*, 844 F.3d at 808.  While there may be exceptional circumstances where kitchen helpers, hand packagers, and meat trimmers must perform tasks that could vary on a daily basis, this case does not present any such circumstances.  In addition, the VE eliminated jobs based on Plaintiff's limitations.  The ALJ was entitled to rely on the VE's "experience in job placement" to account for "a job's particular requirements."  *See Gutierrez*, 844 F.3d at 808–09; Policy Interpretation Ruling: Titles II & Xvi: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions, SSR 00–4P, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000).  The ALJ properly relied on the VE's testimony because the hypotheticals presented to the VE considered all of Plaintiff's limitations that were supported by the record.  *See Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (considering VE testimony reliable if the hypothetical posed includes all of claimant's functional limitations).  Accordingly, the ALJ did not err at Step Five.

**B.      The ALJ's RFC Determination is Supported by Substantial Evidence**

An RFC "is the most [one] can still do despite [one's] limitations" and it is assessed "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 416.945(a)(1).  "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine [RFC]."  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir.

2001).  Further, an ALJ's RFC determination need not precisely reflect any particular medical provider's assessment.  *See Turner v. Comm'r of Soc. Sec. Admin*., 613 F.3d 1217, 1223 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that the plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

Here, in questioning the ALJ's failure to develop the record, Plaintiff alleges that "the ALJ did not base the physical RFC limitations on any treating, examining or reviewing opinions of record."  (Doc. 16 at 12.)  Specifically, Plaintiff claims that the ALJ took it upon herself to start from scratch and use her lay knowledge to interpret the raw medical evidence, rather than obtaining an opinion from an acceptable medical professional for interpretation.  (*Id*.; *see also* Doc. 19 at 6.) These contentions are unavailing.

The nature of the ALJ's responsibility is to interpret the evidence in the record, including medical evidence.  *See, e.g., Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Such a responsibility does not result in the ALJ committing legal error when she assesses an RFC that is consistent with the record.  *See Mills v. Comm'r of Soc. Sec*., No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) ("it is the ALJ's responsibility to formulate an RFC that is based on the record *as a whole*, and thus the RFC need not exactly match the opinion or findings of any particular medical source.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (original italics)).

According to the record, there were several expert medical opinions regarding Plaintiff's impairments that the ALJ considered in evaluating her RFC.  Namely, the ALJ considered the persuasiveness of the opinions of State agency disability consultants Dr. Patterson, Dr. Salib, Dr. Ruo, Dr. Greene, as well as the opinions of Dr. Stafford and Dr. Portnoff, as the ALJ was charged to do.  (AR 29–31.)  The ALJ found the opinions of Dr. Patterson and Dr. Salib to be "somewhat persuasive," and the opinions of Dr. Portnoff and Dr. Stafford to be "mostly persuasive," as they were "consistent with [Plaintiff's] mental health record" and "supported by their mental status examination findings."  (AR 31.)  Even so, in an abundance of caution, the ALJ restricted Plaintiff "to simple routine repetitive tasks with occasional contact with public and occasional tasks that

require teamwork because of [her] anxiety and reluctance to go out of her house." (AR 31.)  In addition, the ALJ found the opinions of Dr. Ruo and Dr. Greene to be "somewhat persuasive" and "mostly consistent with the medical evidence record." (AR 31.)  Nevertheless, "with an abundance of caution, and consistent with [Plaintiff's] lumbar spine x-ray findings and her occasional Graves['] disease related fatigue," the ALJ restricted Plaintiff "to a medium [RFC]." (AR 31–32.)

Having considered both the opinions of multiple medical professionals, the ALJ formulated Plaintiff's RFC, which included a more restrictive limitation to exertional activity than found by the opining physicians.[6]  *See Mills*, 2014 WL 4195012, at *4 (finding argument that the ALJ was improperly attempting to "play doctor" to be without merit where the ALJ "carefully analyzed the various medical opinions, treatment records, and [the] plaintiff's own testimony in formulating an RFC."); *see also* 20 C.F.R. § 404.1527(d)(2) ("the final responsibility for deciding [an RFC] is reserved to the Commissioner"), § 404.1545(a)(1) ("We will assess your [RFC] based on all the relevant evidence in your case record.").  "Indeed, [P]laintiff can hardly fault the ALJ for giving [her] the benefit of the doubt and assessing an RFC that is more favorable to [P]laintiff than most of the medical opinions in the record." *Mills*, 2014 WL 4195012, at *4.

Plaintiff does not challenge the ALJ's evaluation of the physicians' opinions, nor does she specify any additional functional limitations that were not accounted for in the ALJ's RFC assessment.  Further, Plaintiff does not otherwise show any inconsistency between this evidence and her RFC.  Instead, she appears to be advocating for an alternative interpretation of the evidence that she cites in her briefing.  The Court, however, will not second-guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

In sum, the Court does not find error in the ALJ's reliance on the opinions of the physicians and finds that substantial evidence supports the ALJ's conclusions regarding the impact of Plaintiff's impairments on the RFC.  Plaintiff may disagree with the RFC, but the Court must uphold the ALJ's determination because it is a rational interpretation of the evidence. *See Ford*,

---

[6] The ALJ's RFC assessment is also based on consideration of the subjective complaint testimony, which, as set forth more fully below, the ALJ appropriately discredited.

950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential," and "our inquiry 'defers to the presiding ALJ, who has seen the hearing up close'"); *Thomas*, 278 F.3d at 954.

## C.    The ALJ Properly Evaluated Plaintiff's Testimony

### 1.    Legal Standard

In evaluating the credibility of a claimant's testimony regarding their impairments, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that their impairment could reasonably be expected to cause the severity of the symptom they have alleged; they need only show that it could reasonably have caused some degree of the symptom. *Id*. If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "'specific, clear and convincing reasons'" for the rejection. *Id*.

As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009) ("If an ALJ finds a claimant's characterization of his or her own symptoms unreliable, the ALJ must make a credibility determination backed up by specific findings."). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he or she complains. *Light*, 119 F.3d at 792.

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General

findings are not sufficient to satisfy this standard; "'rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'"  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

### 2.      Analysis

Here, Plaintiff contends that the ALJ erroneously discounted her subjective complaints and failed to provide "clear and convincing" reasons for doing so.  (Doc. 16 at 14–17.)  The ALJ's analysis first focused on whether Plaintiff had an underlying medically determinable physical or mental impairment that could reasonably be expected to produce her symptoms.  After carefully considering the evidence, including Plaintiff's Adult Function Report, the Third-Party Adult Function Report submitted by Plaintiff's daughter, and Plaintiff's testimony at the hearing (AR 22–23), the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms (AR 23).  However, the ALJ did not fully accept Plaintiff's testimony concerning her own limitations, finding that "[her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (AR 23; *see also* AR 31.)  Specifically, the ALJ found that Plaintiff's subjective symptom testimony was inconsistent with the medical evidence, including records showing improvement with treatment.

In evaluating a claimant's claimed symptoms, an ALJ may find a plaintiff less credible when his or her symptoms can be controlled by treatment and/or medication.  *See* 20 C.F.R. § 416.929(c)(3)(iv)–(v); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits.").  But, the Ninth Circuit has explained how,

> [a]s we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment.  Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Garrison*, 759 F.3d at 1017.

Here, the ALJ did not discredit Plaintiff merely due to waxing and waning symptoms.  To

the contrary, the ALJ stated as follows:

> [Plaintiff's] mental health record shows generally consistent mental status examinations and stability on her medication regimen. The record shows [Plaintiff] regularly saw her prescribing psychiatrist, but did not regularly engage in counselling or individual therapy. Her respiratory disorders are well controlled on medication. Plain x-ray imaging shows a grade I/II anterolisthesis of L5 on S1 with superior and inferior endplate degenerative changes, without evidence of instability (Exhibit 6F), and her occasional back pain is controlled with ibuprofen according to her testimony. [Plaintiff's] Graves['] disease requires some occasional medication adjustment (Exhibit 9F).

(AR 31.)

At the first hearing on November 20, 2019, Plaintiff testified that her symptoms had gotten worse since 2017. (AR 66.) At the next hearing held on April 8, 2020, Plaintiff testified that she takes medication for anxiety twice a day, and though the medication helps, it does not eliminate the anxiety completely. (AR 50.) Plaintiff also stated she experiences the following symptoms due to depression: loss of appetite; loss of train of thought; constant thoughts of self-doubt; and lack of health hygiene. (AR 52.) And, she is unable to sleep at night without medication due to racing thoughts, body aches, and muscle spasms. (AR 54.)

However, there is substantial evidence in the record that Plaintiff's mental and physical conditions had indeed improved with medication and treatment during the relevant period. For example, in October 2017, during a mental health evaluation with Dr. Portnoff, Plaintiff reported PTSD with symptoms such as "uncued" panic attacks twice a week and overactive verbal anger, as well as chronic depression. (AR 573–74.) In November 2017, when Plaintiff was seen for depression and anxiety, she did not report mood swings and she stated her anxiety level was manageable. (AR 585.) In particular, Plaintiff sought to continue with the medications and reported no side effects. (AR 585.) The psychiatrist, Dr. Ramon Raypon, deemed her symptoms to be stable. (AR 586.) When Plaintiff returned in December 2017 and February 2018 to see Dr. Raypon, she reported feeling less depressed and nervous, her mood was good, and she was doing well on her medications and not experiencing any adverse side effects. (AR 587–89.) In March 2018, Plaintiff again reported doing well on the medication, which she stated helped her with sleep and feeling less depressed and nervous. (AR 689.) Over the course of visits throughout the next few years, Plaintiff reported improvements as to her depression and mood swings and, with slight

changes to her regimen, sought to continue with the medications.  (AR 691, 693, 695, 697, 701, 706, 710.)  In February 2020, Plaintiff reported recent episodes of anxiety and depression, but stated medications were helping to control her symptoms and they were "'manageable'" with no reports of mood swings or agitation.  Accordingly, Dr. Raypon decreased the dose of one of Plaintiff's medications and noted her symptoms were "somewhat better."  (AR 747–48.)

Furthermore, as discussed above, the ALJ fully considered several medical opinions.  (AR 30–31.)  For example, the ALJ described how Dr. Stafford opined that Plaintiff's ability to perform simple and repetitive tasks was unimpaired; however, her abilities to complete a normal workday without interruptions from a psychiatric condition and to deal with the usual stress encountered in the workplace were moderately impaired due to emotional dysregulation, low frustration tolerance, and limited coping skills.  (AR 30.)  The ALJ also noted that Dr. Patterson opined Plaintiff "had adequate mental capacity to sustain complex tasks, to follow directions without additional assistance, and to maintain adequate attention, concentration, persistence and pace as needed to sustain a normal workday and workweek." (AR 31.)  Dr. Salib agreed and endorsed Dr. Patterson's opinion.  (AR 31.)  In addition, the ALJ highlighted that Dr. Ruo noted Plaintiff "reported that her low back pain did not hurt any more, and her physical examinations appear within normal limits." (AR 31.)  Accordingly, Dr. Ruo opined that Plaintiff's physical impairments were non-severe, and Dr. Greene agreed and endorsed the opinion of Dr. Ruo.  (AR 31.)  Finally, the ALJ found that the Third-Party Function Report submitted by Plaintiff's daughter was "consistent" with Plaintiff's allegations, "but not persuasive, as it is not well supported by the medical and mental health records."  (AR 32.)

As there is substantial evidence of Plaintiff's improvement with treatment, such is a clear and convincing reason for not finding Plaintiff's subjective complaints to be fully credible.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (the ALJ's adverse credibility determination properly accounted for physician's report of improvement with medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were responsive to treatment).  While Plaintiff may disagree with the ALJ's interpretation of the medical evidence, it is not within the province of this Court to

second-guess the ALJ's reasonable interpretation of that evidence, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Rollins*, 261 F.3d at 857.

**V.      CONCLUSION AND ORDER**

After consideration of Plaintiff's and the Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **November 29, 2022**                    */s/ Sheila K. Oberto*
                                                                UNITED STATES MAGISTRATE JUDGE